UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

**BORIS GERASIMOV**
815 Conder Street
Killeen, TX 76541
Tel: (254) 389-0530
e-mail: borisgerasimov@yahoo.com
     plaintiff *pro se*

against:

**NORRIS MCLAUGHLIN P.A. LAW FIRM**
7 Times Square, 21st Floor
New York, NY 10022
(212) 808-0700
     Defendant

**AMALGAMATED HOUSING CORPORATION**
98 Van Cortlandt Park South
Bronx, New York 10463
Tel: (718) 796-9300
     Co-Defendant

28 USC §1331:

VIOLATION OF
US CONSTITUTION,
14th AMENDMENT,
DUE PROCESS CLAUSE

**6:23-cv-419**

FILED
JUN 05 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

# COMPLAINT

COMPLAINT of plaintiff Boris Gerasimov respectfully shows and alleges as follows:

## TABLE OF CONTENTS

I. LEGAL STANDARD AND DEFINITIONS (points i–xii)............................. page 3

II. HISTORY OF THE MATTER. ATTEMPTED FRAUD UPON THE COURT IN UNDERLYING CASES #31890/12, #32573/13. FACTS ...................................... 6

III. RES JUDICATA MATTER OF CASE #16124/17 COMMENCED AGAINST PLAINTIFF WITH FRAUD UPON THE COURT, FULLY PROCEEDED AND ADJUDICATED, PRESENTS DOCUMENTARY EVIDENCE OF DELIBERATE AND WILLFUL VIOLATION OF 14th AMENDMENT, DUE PROCESS CLAUSE BY DEFENDANT IN COMPLICITY WITH CO-DEFENDANT ....................... 8

IV. BACKGROUND AND MOTIVATION ............................................................ 9

V. INFERENCE ........................................................................................................ 12

VI. DAMAGES .......................................................................................................... 13

VII. PRAYER FOR RELIEF ..................................................................................... 17

VERIFICATION ........................................................................................................ 19

## EXHIBITS:

EXHIBIT "A" ............................................................................................................. 20
EXHIBIT "B" ............................................................................................................. 21
EXHIBIT "C" ............................................................................................................. 22
EXHIBIT "D" ............................................................................................................. 23
EXHIBIT "E" ............................................................................................................. 25
EXHIBIT "F" ............................................................................................................. 29
EXHIBIT "G" ............................................................................................................. 34

# I. LEGAL STANDARD AND DEFINITIONS

Under Article III of the Constitution, federal courts can hear "all cases, in law and equity, arising under this Constitution, [and] the laws of the United States..." US Const, Art III, Sec 2. The Supreme Court has interpreted this clause broadly, finding that it allows federal courts to hear any case in which there is a federal ingredient. Osborn v. Bank of the United States, 9 Wheat. (22 U.S.) 738 (1824).

28 USC 1331 - The Statutory Component

For federal question jurisdiction to exist, the requirements of 28 USC 1331 must also be met. This statute gives federal courts jurisdiction only to those cases which "aris[e] under" federal law. 28 USC 1331. This requirement has been found to be narrower than the requirements of the constitution. The Supreme Court has found that a "suit arises under the law that creates the cause of action," American Well Works v. Layne, 241 US 257 (1916), and therefore, only suits based on federal law, not state law suits, are most likely to create federal question jurisdiction, Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149 (1908).

... the plaintiff's initial complaint must contain the references to the federal question and the federal issue evoked. This requirement was established in *Louisville & Nashville R. Co. v. Mottley*, and as such it is often referred to as the "Mottley Rule."

i. US CONSTITUTION, 14th AMENDMENT, DUE PROCESS AND EQUAL PROTECTION CLAUSES:

**Section 1**

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

ii. FRAUD UPON THE COURT:

(Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985)

"Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

(ROBERT BURKE v. UNITED STATES OF AMERICA, CIVIL ACTION NO. 96-3249):
Almost all of the principles that govern a claim of fraud on the court find their genesis in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944). The principles are:

"In order to meet the necessarily demanding standard for proof of fraud upon the court ... there must be: (1) an intentional fraud; (2) by an officer of the court;
(3) which is directed at the court itself; and (4) in fact deceives the court. We further conclude that a determination of fraud on the court may be justified only by "the most

egregious misconduct directed to the court itself," and that it "must be supported by clear, unequivocal and convincing evidence."

iii. the DOCTRINE OF RES JUDICATA:

The doctrine of *res judicata* is similar to the criminal law concept of double jeopardy, but in a civil law setting. *Res judicata* bars any party to a civil lawsuit from suing again on the same claim or issue that has previously been decided by the court. This includes any issue that was heard and decided in the first lawsuit, even if the subsequent lawsuit attempts to state different reasons the party should prevail.

iv. the DOCTRINE OF DIRTY HANDS:

Also known as the "clean hands doctrine" and the "dirty hands doctrine." An equitable defense that bars relief to a party who has engaged in inequitable behavior (including fraud, deceit, unconscionability or bad faith) related to the subject matter of that party's claim. ... Although the unclean hands doctrine is typically an affirmative defense asserted by a defendant, it may also be asserted by a plaintiff in opposition to an equitable defense such as estoppel. ...
To prevail, a party must demonstrate that its opponent engaged in inequitable behavior that is related to the subject matter of the litigation.

v. NY CPLR 3211 (a)(1)

A party may move for judgment dismissing one or more causes of action asserted against him on the ground that: 1. a defense is founded upon documentary evidence;

vi. NY CPLR 3211 (a)(5)
the cause of action may not be maintained because of arbitration and award, collateral estoppel, discharge in bankruptcy, infancy or other disability of the moving party, payment, release, *res judicata*, statute of limitations, or statute of *frauds*;

vii. NYCRR §130-1.1 (c)
 (c) For purposes of this Part, conduct is frivolous if:
(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law;
(2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or
(3) it asserts material factual statements that are false.

viii. NY PENAL LAW - PEN § 210.10 (Perjury in the second degree)
A person is guilty of perjury in the second degree when he swears falsely and when his false statement is (a) made in a subscribed written instrument for which an oath is required by law, and (b) made with intent to mislead a public servant in the performance of his official functions, and (c) material to the action, proceeding or matter involved.
Perjury in the second degree is a class E felony.

ix. 18 U.S. Code § 1621. *Perjury generally*)
Whoever—
(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter

which he does not believe to be true; is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both.

## x. LEGAL DEFINITIONS:

intrinsic fraud: an intentionally false representation that goes to the heart of what a given lawsuit is about, (source: https://en.wikipedia.org/wiki/Intrinsic_fraud )

extrinsic fraud: fraud that is not involved in the actual issues presented to a court and that prevents a full and fair hearing, called also *collateral fraud*, (source: https://dictionary.findlaw.com/definition/fraud.html )

fraud upon the court: fraud involving conduct that undermines the integrity of the judicial process (as by improperly influencing a judge, jury, or other court personnel) *also*: *extrinsic fraud* in this entry, (source: https://dictionary.findlaw.com/definition/fraud.html )

## LEGAL AUTHORITIES:

xi.
Preclusion of 'res judicata' matter from relitigation is incorporated into FRCP Rule 12 (b)(1) ("The defense of res judicata is jurisdictional in character." Rizvi v. McClure, 597 F. Supp. 2d 63, 66 (D.D.C. 2009) (citing Stanton v. D.C. Ct. of Appeals, 127 F.3d 72, 77 (D.C. Cir. Case 1:09-cv-01376-RBW Document 12 Filed 05/13/10 Page 4 of 12 5 1997)). Therefore, "a motion for dismissal based on res judicata properly falls under Federal Rule of Civil Procedure 12(b)(1)." Id.),

xii.
CDR Creances S.A.S. v Cohen 2014 NY Slip Op 03294

Fraud on the court involves willful conduct that is deceitful and obstructionist, which injects misrepresentations and false information into the judicial process 'so serious that it undermines ... the integrity of the proceeding'. (Baba-Ali v. State, 19 NY3d 627, 634 [2012] [citation and quotations omitted] ) It strikes a discordant chord and threatens the integrity of the legal system as a whole, constituting 'a wrong against the institutions set up to protect and safeguard the public'. (Hazel-Atlas Glass Co. v. Hartford-Empite, 322 U.S. 238, 246 [1944];

The evidentiary standard applied by the federal courts is sufficient to protect the integrity of our judicial system, and discourage the type of egregious and purposeful conduct designed to undermine the truth-seeking function of the courts, and impede a party's efforts to pursue a claim or defense. We adopt this standard and conclude that in order to demonstrate fraud on the court, the non-offending party must establish by clear and convincing evidence that the offending 'party has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and his adversary's defense of the action'. (McMunn, 191 F Supp 2d at 445, citing Skywark v. Isaacson, 1999 WL 1489038, 14 [SD N.Y. Oct. 14, 1999, No. 96 CIV. 2815(JFK) ] affd 2000 WL 145465, 1 [SD N.Y. Feb. 9, 2000).

Essentially, fraud upon the court requires a showing that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."

xiii. 538 U.S. at 421-22.

Concerning the maximum ratio of allowable punitive to compensatory damages, the Court refused to "impose a bright line ratio," explaining instead that there is:
A long legislative history, dating back over 700 years and going forward to today, providing for double, treble, or quadruple damages to deter and punish. (Citation omitted). While these ratios are not binding, they are instructive. They demonstrate what should be obvious:
Single digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution ....538 U.S. at 425 (emphasis added).
The Court made clear that "ratios greater than those we have previously upheld may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages" and "that a higher ratio *might* be necessary where the injury is hard to detect or the monetary value of non-economic harm might have been difficult to determine." 538 U.S. at 425. On the other hand, the Court also explained that when compensatory damages are substantial (as in *Campbell,* where one million dollars in compensatory damages was allowed for the emotional distress of facing the possibility of financial ruin), "then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Id.*
The overarching principle is that the "precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." 538 U.S. at 424-25.

## II. HISTORY OF THE MATTER

ATTEMPTED FRAUD UPON THE COURT IN UNDERLYING CASES

#31890/12, #32573/13.

### FACTS

1. In the year 2006 Plaintiff became a shareholder/tenant of the Amalgamated Housing Corporation (further AHC, or AHC coop, or coop).

2. On June 4, 2012 Co-Defendant AHC filed with the Bronx Housing Court Petition Holdover #31890/12 based on frivolous cause of action, to wit: Plaintiff's "*playing piano in apartment in legal time misrepresented as nuisance*".

3. To ensure acceptance of manifestly frivolous matter by the Court Clerk Office, Co-Defendant inserted into the matter (point 11 of the Petition) fraudulent financial claim of $2,243 originated from falsifying Plaintiff's business record #70113272.

4. Petition Holdover was signed by the AHC General Manager Mr. Charles M. Zsebedicks, and verified *under penalties of perjury* by Defendant, Norris McLaughlin P.A. Law Firm (further "NM") associate attorney Mr. Dean M. Roberts.

5. Presentation of perjurious matter of case #31890/12 to Housing Court was absolutely impossible, but for *conspiracy* and *complicity* of Co-Defendant AHC with Defendant NM.

5. Plaintiff was compelled to hire a defense attorney.

6. Fraudulent case was dismissed by the Resolution Judge without prejudice, and without going to the matter – on the reason that coop had accepted rent payment *after* commencement of eviction proceeding.  See EXHIBIT "A".

7. Accepting rent *after* commencement of eviction proceeding was a constituent of premeditated fraudulent scheme used by conspired Defendant/Co-Defendant against Plaintiff.

8. Dismissal *without prejudice* of fraudulent matter #31890/2012 was all that conspirators needed to start misuse of Housing Court *on continuous basis*, for improper purpose to force and compel Plaintiff and his family to vacate the premises.

9. Next year, 2013, coop filed with the Court next, the second frivolous fraudulent eviction proceeding #32573/13, which was material replica of the prior Petition Holdover #31890/12 – word by word, even keeping the name of Plaintiff's son John who at the time moved out.

10. Case #32573/13 was finally tried, and successfully argued by Plaintiff *pro se*.

11. Its frivolous fraudulent matter "*playing piano in the apartment in legal time misrepresented as nuisance*" was discontinued *with prejudice* by the Bronx Housing Court final decision. See EXHIBIT "B"

12. The matter became *res judicata*.

## III. RES JUDICATA MATTER OF CASE #16124/17
### COMMENCED AGAINST PLAINTIFF WITH FRAUD UPON THE COURT,
FULLY PROCEEDED AND AJUDICATED, PRESENTS DOCUMENTARY EVIDENCE
OF DELIBERATE AND WILLFUL VIOLATION
OF 14th AMENDMENT, DUE PROCESS CLAUSE
BY DEFENDANT IN COMPLICITY WITH CO-DEFENDANT

13. Three years of the lapse between losing case #32573/13 and commencing by Defendant the third malicious eviction proceeding #16124-17 was presumably caused by presence in the Bronx Housing Court of reputable judges familiar with the matter – Hon. John Stanley, Hon. Jaya Madhavan, and Hon. Eardell J. Rashford.

14. By the end of the year 2016 the situation changed. On March 13, 2017, Co-Defendant filed with the Bronx Housing Court next, the third fraudulent Petition Holdover #16124-17 against Plaintiff's family, which presented to Court *res judicata* matter of the prior case #32573/13, namely, *playing piano in apartment in legal time misrepresented as nuisance.*

15. As a result of committed by Defendant Fraud Upon the Court exposed below (See EXHIBIT "C"), *res judicata* matter of case 16124/17 was fully proceeded, and dismissed after redundant trial – again *with prejudice.* See EXHIBIT "D"

16. Matter of EXHIBIT "C" warrants applicability of the Doctrine of Dirty Hands. (See point iv on page 4 above).

17. The Bronx Housing Court was fully aware that matter #16124/17 was *res judicata* filed by Fraud Upon the Court. See EXHIBITS "E" and "F"

## IV. BACKGROUND AND MOTIVATION

18. The following letter was addressed by Plaintiff to then Bronx DA Mr. Robert Jonson, handed down to the DA Office Receptionist on February 24, 2014, immediately submitted to Mr. Robert Johnson, and same day forwarded to Mr. Richard P. Kearney for further investigation:



QUOTE:

Dear Mr. Robert Johnson,

As the tenant/shareholder of Amalgamated Housing Corporation (the AHC Co-op) I am concerned with visible signs of corruption of the Co-op leadership and Management that in my believe warrants investigation.

The three most recent Amalgamated managers left in the last 7 years. Two years ago, the Board of Directors hired Mr. Charles M. Zsebedics – convicted in grand larceny felon who participated in a criminal scheme that defrauded people of Queens of $1.3 million. See:
( http://www.nyc.gov/html/doi/downloads/pdf/pr062299.pdf  (NB by Plaintiff: the post is removed from the internet), and:
http://riverdalepress.com/stories/Amalgamateds-new-manager-has-fraud-on-resume-,48948 )

Mr. Zsebedics' defiled Resume was selected by AHC Board of Directors from 50 other Resumes - while every applicant for the Co-op apartment undergoes mandatory criminal background checkup. Applicants with found criminal past are rejected.

Soon after hiring Mr. Zsebedics, capital projects never before considered as necessary, started to emerge one by one. For the last nine months several big buildings are surrounded with expensive rented scaffoldings without any visible work being done. Today, according to the letter of AHC President Mr. Ed Yaker, Co-op has eight such capital projects in progress.

These projects were started by taking a $30 million loan with extremely high 4.51% APR rate. ( http://www.ncb.coop/default.aspx?id=5238 while interest free financing by the State was available. (the web page removed from the Internet). For the Housing Co-op of about 1500 units this figure means roughly $50 + million total debt, or $33,600 debt for every household. The letter under signature of Mr. Ed Yaker, informing Cooperators about closing the loan, is silent regarding general amount of borrowed money. It only says that this transaction will make AHC Cooperators to repay to the NCB Bank $1.8 million (or $7500 per family) **more money than originally expected**.

This size of financial transaction taken by Board of Directors without approval by the whole community of shareholders looks like squandering of corporate account committed under color of official right.
What are in reality these capital projects that supposedly urgently needed to be completed with this enormous debt?

The "Building Entrance Project" was presented to the cooperators in the letter of AHC Assistant Manager Mrs. Jennifer Rankin: "…several entry staircases of two biggest buildings constructed in 1960 will be demolished. New staircase to building 13A and walkway from the building entrance to the sidewalk will be built with a heating element under the concrete steps". The price for this project is not disclosed. The workers of the AHC Service Department can fix small visible dents on the entrance steps of the building for the price of 20 bricks. Pictures show that such repairs have been done in the past. The entrance was designed for lasting as long as the building itself by making small repairs when needed. Heating elements under steps, besides being unneeded luxury, are prone to malfunction, and so, to constant repair (for extra charges, of course). Indeed, already completed first entry staircase and walkway of the building 13A was demolished again because the heating elements failed. Damage done to aesthetical integrity of the building by demolition of its original entrances is already irreversible. So, no investigation needed to see that this project is phony – to say the least. **"The blind can see" that the Administration is running projects the Co-op does not need for the money Co-op does not have.** Precise information regarding real necessity of all other capital projects can be obtained from Mr. Zsebedics himself.

Last year, as a preparation for taking multimillion loan, Co-op leadership addressed DHCR with request to increase monthly maintenance payments by $20 per room - and was able to secure increase by $14 starting from June 2013. In 5 years when heavy financial burden of enormous loan will start affecting Co-op budget, next significant monthly payment increases will be imminent. **As a result, the Co-op will not be able to provide affordable housing for people with low and moderate income – the very purpose of its creation 84 years ago, and the main reason of its financing by the State.** Many members (*probably majority*) will be forced to move out. People do not realize this today.

Multimillion loan being feverishly squandered on phony projects creates impression that AHC President Mr. Ed Yaker has led AHC Board of Directors into hiring Mr. Zsebedics – an

experienced in grand larceny felon with special skills and connections – as the best candidate for running a kickback and bid rigging scheme like that successfully prosecuted by the NY City Department of Investigation in year 2000. Additional information together with expression of frustration and anger of dozens of members of the AHC community can be found on this Free Press Web page:
http://yourfreepress.blogspot.com/2011/07/hiring-of-felon-causes-cooperator.html

Thorough investigation of financial practices of current AHC Administration is urgently needed to insure the very existence of the Amalgamated Co-op as affordable housing in the near future.

(all mentioned above supporting materials and pictures are available upon request)

Thank you.
Sincerely,
Boris Gerasimov
February 24, 2014

UNQUOTE.

19. Next day, during meeting with Mr. Kearney in his office, he informed Plaintiff that this problem exists not only with the AHC coop, but with other NY City coops as well, and promised to investigate the matter.

20. Plaintiff never received any official confirmation of accepting his letter by the Bronx DA Office: no docket number, no replay letter, or any sign of acknowledgment. No reaction on submitted information from Mr. Kearney ever followed. His phone number became blocked for picking up calls from Plaintiff's home phone.

21. Today, as it was predicted eleven years ago in cited above letter, the AHC coop is facing imminent bankruptcy. See the Bronx News Publication on March 9, 2023 on the web page:

https://www.bxtimes.com/riverdales-amalgamated-houses-facing-gas-service-shutoffs/

22. According to comments of the AHC cooperators posted on the web page:

https://yourfreepress.blogspot.com/search?q=Hiring+of+a+Felon+Causes+Cooperator+Discontent+at+a+Bronx+Housing+Cooperative++++++++++++++++++++++++++++++++++++By+Jay+Hauben+and+Rafael+Mart%C3%ADnez+Alequ%C3%ADn++

this ruinous calamity is caused by corrupt AHC Administration and Management.

# V. INFERENCE

23. Proceeding of retaliatory eviction case #16124/17 which violated Plaintiff's Constitutional Right for Due Process in trial, exposed presence in the Bronx of *organized crime*, deliberately misusing New York City Judicial System.

24. Only uncompromised investigation can find how many AHC tenants and their families were for the last 20 years defrauded by corrupt AHC Administration, and forced to vacate affordable housing.

25. Sure, this time, more than 2000 AHC tenants defrauded of affordable housing by a bunch of felons – already convicted (AHC Gen. Manager Mr. Charles M. Zsebedics), as well as still not indicted – are not going to swallow this scam silently, (See:

http://riverdalepress.com/stories/Amalgamateds-new-manager-has-fraud-on-resume-,48948
and:
http://yourfreepress.blogspot.com/2011/07/hiring-of-felon-causes-cooperator.html
and:
https://www.habitatmag.com/Publication-Content/Bricks-Bucks/Amalgamated-Makeover , )

but, deprived of judicial protection, their voices will remain biblical *"voices in a desert"*.

26. $47 million loans, squandered by corrupt AHC Board of Directors and Management on ostensibly "Overdue Makeover", if spent properly, would prevent the AHC community from today's calamity. Twelve years ago, hiring Mr. Zsebedicks for the position of General Manager, the AHC Administration was acutely aware of urgent problem with coop's aging RE.

27. The question is, why the approaching catastrophe was ignored?

The only answer: Con Edison (NYC Energy company) does not pay kickbacks to customers.

\*\*\*

## VI. DAMAGES

UNDERLYING HISTORY:

Late in 1988 Plaintiffs addressed the Soviet Authorities with a letter renouncing Soviet citizenship and asking permission to leave the country on the reason of "deep disappointment with the values and the future of socialism." After a year of bureaucratic procrastination and followed personal intervention of Hon. Mr. Robert A. Sorenson – then the US Vice-Consul in Moscow – permission was granted, and on June 4, 1990 Plaintiff and his family – equipped with rudimentary English – entered the USA as political refugees under auspices of International Rescue Committee (IRC).

Plaintiff and his family have had no relatives in the US. The reason for immigration was purely political.

Committed by conspired Defendant/Co-Defendant assault on the very reason of Plaintiff's emigration from the former Soviet Union into the United States – the *Country of Law* – done with imposing Fraud Upon the Court – assault on Plaintiffs' intelligence and integrity, assault on

the very dignity of the American Citizenship, caused to Plaintiff's family unspeakable mental anguish.

BACK TO MAIN POINT:

28. Findings made by Judge Hon. Miriam Breier in adjudication of case #16124/17 are fully applicable to the matter of both underlying cases #31890/12 and #32573/13.

29. Thus, it is judicially proven that all three fraudulent eviction proceedings against Plaintiff were commenced without justification, for improper purpose to damage Plaintiff and his family. And the purpose was achieved.

30. Malicious prosecution of Plaintiff's family committed by conspired Defendant/Co-Defendant with commencement, procurement, and completion of the three-fold fraudulent litigation, comprising cases #31890/12, #32573/13, and #16124-17, have brought culpable damages to Plaintiff's rights, time, health and wellbeing, and caused lasting for years emotional distress.

## STATEMENT OF DAMAGES:

    a.    Emotional distress:

31. Years of expecting the possibility of financial ruin by fraudulent eviction caused severe emotional distress to Plaintiffs. Attorney Mr. D. M. Roberts openly threatened Plaintiffs with losing apartment. If in fraudulent eviction proceeding #16124-17 Co-Defendant prevailed, as it happened in initial case #31890/12, Plaintiffs, being in advanced age and living on tight budget, would imminently face forced moving into a tiny dwelling, the only available to them for current market prices – lacking place for the grand piano and home library of several thousand books and music scores collected for five decades – thus, to undergo a radical and irreversible downgrade of their meaningful active lifestyle.

    b.    Damage to Plaintiffs' rights:

32. Plaintiff's unalienable right for Due Process in Court, violated by conspired Defendant/Co-Defendant with breach of the US Constitution, 14th Amendment, Due Process Clause by commencement of illegal eviction proceeding #16124/17, was irreparably damaged.

33. By acting in willful, wanton, and reckless disregard to Law conspired Defendant/Co-Defendant have committed multiple encroachments on Plaintiffs' Housing rights.

34. Conspired Defendant/Co-Defendant acted in willful, wanton, and reckless disregard to Elder Law, which in its entirety and spirit considers any crime committed against the elderly as aggravated;

    c.    Damage to Plaintiff's time:

35. Defendant's/Co-Defendant's actions have forced Plaintiff to spend uncountable hours of his time with inflicted burden of self-defense.

    d.    Damages to Plaintiff's health:

36. Being in advanced age, Plaintiff and his wife suffered from HBP (High Blood Pressure). Damage done by Defendant's/Co-Defendant's actions to Plaintiffs' health by inflicting lasting stress is immeasurable, and irreversible. Plaintiff's wife Ekaterina Gerasimov died in 2020.

    e.    Pecuniary damages:

37. in amount of $5,000 as reasonable attorney's fees paid by Plaintiffs to attorney Mr. Mark D. Lazarus for defense against fraudulent Petition Holdover #31890/12.

    f.    Special injuries:

38. Frivolous cause of action in all three fraudulent eviction cases was stated by Defendant as *playing piano by Plaintiffs in apartment in legal time*. Playing piano for Plaintiffs is much more

than a pleasurable and unquestionably legal cultural activity in leisure time. It has its end in volitional creative work to benefit American musical culture. Plaintiff Boris Gerasimov made his career in the United States as Music Director serving the Catholic Church. Beside this, he also is an active member of American Society of Composers, Arrangers and Producers (ASCAP, member number 1788874). Plaintiff's composer's portfolio contains a number of published and still unpublished musical compositions. Among completed and prepared for publication works there is composed in 2012 vocal cycle of 24 songs "Gems of English Poetry". Choice of texts for this full-size musical composition reflects Plaintiff's comprehensive studying of English classical poetry. See EXHIBIT "G". Completion of this work has taken two years of Plaintiff's free time, and would be impossible without playing piano. However, publication of this opus and completion of the second book, "Gems of American Poetry" – of originally conceived diptych – was cut off by the devastating impact of commenced in 2012 by Defendant initial #31890/12, and two followed malicious eviction proceedings. Inflicted burden of self-Defense has taken its toll on Plaintiff's time, energy and peace of mind, heavy enough to stop his creative work. Until today this musical composition – a token of love and gratitude to Plaintiff's new home country – remains unfinished. Considering Plaintiff's age of 79, perspectives of finishing this work and realization of other Plaintiff's creative projects remain uncertain. So, special Damages done to Plaintiff by Defendant/Co-Defendant may be considered as *private and public*.

Damages done to Plaintiffs' creative work "… is hard to detect and the monetary value of non-economic harm might have been difficult to determine." (538 U.S. 408, 425).

    g.    Punitive Damages:

39. Preclusion of *'res judicata'* matter from relitigation, incorporated into FRCP Rule 12 (b)(1)

(see LEGAL AUTHORITIES, point xi. on page 5 above), as well as into the statute 3211 (a)(5) of NYS CPLR, has been proven to be of no effect to deter NM associate, attorney Mr. Dean M. Roberts from imposing Fraud Upon the Court for improper purpose to relitigate 'res judicata' matter of Petition Holdover #32573/13. Failure of the Bronx Housing Court to deliver Justice in proceeding case #16124/17 makes awarding Plaintiff with punitive damages warranted for all purposes.

## VII. PRAYER FOR RELIEF

40. Considering that

1) the claim of violation of the US Constitution, 14th Amendment, Due Process Clause with imposing Fraud Upon the Court by Defendant is fully founded upon documentary evidence;

2) the case #16124-17 is *sui generis* in its lawlessness;

3) all actions of abuse of Judicial System with imposing Fraud Upon the Court were premeditated, *organized,* and committed with *conspiracy* between Defendant and Co-Defendant;

4) Conspired Defendant/Co-Defendant's actions rise to a high level of moral turpitude associated with a criminal indifference to civil obligations;

5) Defendant's conduct was *wanton, reckless, malicious and criminal* – which requires imposition of punitive damages;

6) Defendant/Co-Defendant's *wrong* was *private and public*;

7) legal barrier of *'res judicata'* doctrine – a fundamental principle of jurisprudence, as well as strong legal prohibition of imposing Fraud Upon the Court, have been proven *to be*

*of no effect* to deter conspired Defendant/Co-defendant from violation of Plaintiff's Constitutional Right for Due Process in trial;

8) legal violations done by conspired Defendant/Codefendant have been committed against the elderly;

9) damage to the integrity and dignity of the judicial system was done by Defendant deliberately, by the most egregious misconduct directed to the court itself;

10) attorney Mr. Mark Lazarus in his Counterclaim to initial Petition Holdover #31890/12 has assessed monetary value of damages done to Plaintiff's family in amount of $100,000 –

Plaintiff respectfully prays this Court to issue a final judgment awarding undersigned with

i) $300,000 as relief of compensatory damages done to Plaintiff by Co-Defendant (AHC),

ii) $300,000 as relief of punitive damages done to Judicial System by Defendant (NM). Or, considering 538 U.S. at 421-22, and at 424-25 (see point xiii on page 6 above), any greater amount as this Court deems just and proper.

*[signature]*

Respectfully submitted
June 5, 2023
Killeen, TX

## VERIFICATION

I, plaintiff in this proceeding Boris Gerasimov, being duly sworn, hereby state under penalty of perjury that I have read the foregoing Plaintiffs' Complaint and know the contents thereof, the same are true to my knowledge, except as to the matters therein stated to be alleged on information and belief and as to those matters I belief them to be true.

June 5, 2023
Date

Signed: Boris Gerasimov

SOFIA THEODOSSIOU SCRIVENS
Notary Public, State of Texas
Comm. Expires 04-27-2026
Notary ID 133732022